**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MICKEY PATTERSON and JASON COWEN,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 26-CV-0105-CVE-CDL** |
| **HEATH LINN, BRIAN WOOLSEY, MARY ANN PATTERSON, KENNETH STAFFORD, DEPUTY WILLIAMSON CAPTAIN COLBY OVERSTREET, OFFICER TODD, and JOHN DOE KANSAS POLICE OFFICERS,** | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

Now before the Court are the following motions: defendant Heath Linn's motion to dismiss (Dkt. # 20); plaintiffs' motion for extension of time to serve certain defendants (Dkt. # 22); and plaintiffs' motion for return of seized property (Dkt. # 23). Plaintiffs Mickey Patterson and Jason Cowen filed this case alleging claims under 42 U.S.C. § 1983 arising out of incidents occurring between 2018 and 2026. Defendant Heath Linn argues that some of plaintiffs' claims are time-barred, and Linn asserts that he has qualified immunity from suit for plaintiffs' remaining claims. Dkt. # 20. Plaintiffs request an extension of time to serve certain defendants (Patterson, Woolsey, Stafford, and Williamson) who could not be located, and they ask the Court to allow them 60 additional days to effect service of process. Dkt. # 22. Plaintiffs also ask the Court to order defendants to return all property that was seized from plaintiffs during the execution of a search warrant on November 18, 2025. Dkt. # 23.

# I.

Mickey Patterson was formerly married to Mary Ann Patterson, but she filed for divorce in August 2018. Dkt. # 11, at 2. The divorce proceedings were filed in Delaware County, Oklahoma, and Mickey Patterson alleges that Mary Ann Patterson sold two properties during the divorce proceedings without the knowledge or consent of the court. Id. Mary Ann Patterson allegedly concealed the property sales with the help of their children, and she allegedly dismissed the Delaware County divorce proceedings to avoid disclosing the property sales to the court. Id. Mickey Patterson alleges that Mary Ann Patterson "secretly" refiled divorce proceedings in Creek County, Oklahoma, and he received no notice of the re-filed divorce proceedings. Id. Mary Ann Patterson obtained a default judgment awarding her all of the marital property, including the home where Mickey Patterson resided. Id. The default judgment allegedly included a home located at 173 Berryhill Road in Kansas, Oklahoma. Plaintiffs state that Jason Cowen has been occupying this home pursuant to a "landlord/tentant arrangement" since at least 2018, and the events described in plaintiffs' amended complaint occurred at this address.

In January 2023, plaintiffs claim that Mary Ann Patterson and her boyfriend arrived at 173 Berryhill Road and had a locksmith make them keys to the home. Id. Mickey Patterson states that he was in jail and Mary Ann Patterson knew that he would not be home. Plaintiffs claim that Mary Ann Patterson and her boyfriend were assisted by an off-duty Oklahoma Highway Patrol (OHP) trooper who pointed out security cameras and assisted Mary Ann Patterson with entering Mickey Patterson's home. Id. The OHP trooper allegedly disengaged or dismanteled the security system in part, although plaintiffs' allegations suggest that the security system remained somewhat functional after Mary Ann Patterson's first visit to the home. Jason Cowen states that he received notice of a

motion alert from the security system and called the Delaware County Sheriff's Office. Id. at 3. Cowen used video footage to identify Mary Ann Patterson and he notified law enforcement that she was not permitted to enter the property. Id. Mary Ann Patterson and her boyfriend returned to the property a second time and further disabled the security system, and the couple stole property belonging to both plaintiffs. Id. Plaintiffs allege that a retired OHP trooper, Kenneth Stafford, arranged for the off-duty OHP trooper to assist Mary Ann Patterson with the theft of their personal property from the home. Id. Plaintiffs contacted an internal affairs officer at OHP, Heath Linn, to review the incident, and plaintiffs claim that Linn admitted that Stafford arranged the assistance of an off-duty OHP trooper to assist Mary Ann Patterson with the theft. Id. However, Linn concluded that the off-duty trooper did not violate any laws and closed the investigation. Id.

In March or April 2023, Mary Ann Patterson obtained a protective order against Mickey Patterson and attempted to use the protective order as a means of evicting Mickey Patterson and Cowen from the property. Id. Plaintiffs allege that multiple law enforcement agencies appeared at the home to serve the protective order, and Mickey Patterson was arrested on an outstanding warrant. Id. Cowen and others requested a continuance of the proceedings for enforcement of the protective order due to Mickey Patterson's incarceration, but a state court judge granted Mary Ann Patterson' request for a protective order by default. Id.

In 2024, Mickey Patterson asked the Creek County District Court to vacate the divorce decree entered by default. He claims that the divorce decree was vacated and he was awarded ownership of the home located at 137 Berryhill Road. Id. In October 2025, Mickey Patterson detected motion on his security cameras and called the Delaware County Sheriff's Office. "Deputy Williamson" from the sheriff's office responded to the call, and Mickey Patterson claims that Deputy Williamson

placed him in handcuffs and tased him twice. Id. at 3-4. The Court infers from plaintiffs' allegations that Mickey Patterson was taken to jail, and he alleges that Deputy Williamson failed to notify the jail that Mickey Patterson had been tased. Id. at 4. In November 2025, plaintiffs claim that OHP, the Cherokee Nation Marshals, and the Delaware County Sheriff's Office sent 15 vehicles to the property and conducted a "raid." Id. Plaintiffs claim that law enforcement officials obtained a search warrant for the property after receiving a false report of a scream coming the basement of the home. Id. Plaintiffs allege that Linn "led" the raid after obtaining a search warrant. Id. Linn also allegedly told Mickey Patterson that law enforcement officials were required to show him the search warrant and none of the officers present actually showed Mickey Patterson the search warrant or provided him an inventory of items seized during the search. Id.

Mickey Patterson and Cowen filed this case alleging claims under 42 U.S.C. § 1983 against Mary Ann Patterson, Deputy Williamson, Kenneth Stafford, Heath Linn, Brian Woolsey, Captain Colby Overstreet, and other unnamed law enforcement officials. Plaintiffs allege § 1983 claims for violation of the Fourth and Fourteenth Amendments based on unreasonable search and seizure, excessive force, false arrest, and conspiracy. Plaintiffs are not represented by an attorney and they obtained leave of court to proceed in forma pauperis. Dkt. # 10. Even with assistance from the Court, plaintiffs failed to serve any of the defendants, and the deadline to serve defendants expired on May 27, 2026. The Court extended this deadline to June 29, 2026 and plaintiffs were able to serve Linn, but plaintiffs have not served any of the other defendants.

**II.**

Linn argues that he has qualified immunity from plaintiffs' claims, because plaintiffs have failed to allege that their constitutional rights were violated or that the law giving rise to any

constitutional violation was clearly established. Linn also contends that plaintiffs' claims are time-barred to the extent that the actions giving rise to the claims occurred more than two years before the case was filed. Plaintiffs respond that Linn was part of a conspiracy to deprive Mickey Patterson of his constitutional rights, and Linn allegedly participated in a "militarized raid" of plaintiffs' residence on November 18, 2025. Dkt. # 24, at 2. Plaintiffs contend that the Court can consider events occurring in 2023 as part of their claims under the continuing violation doctrine. Id. at 6.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual

averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

Under § 1983, a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. The elements necessary to establish a § 1983 violation "will vary based on the constitutional provision at issue." Ashcroft, 556 U.S. at 676. Regardless of the constitutional provision at issue, however, "[p]ersonal participation is an essential allegation in a § 1983 claim." Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976). In the context of § 1983 claims against multiple individual government actors, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." Robbins v. Oklahoma, 519 F.3d 1242, 1249 (10th Cir. 2008) (emphasis in original). "[T]he complaint must therefore 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face' as to the specific constitutionally impermissible actions allegedly committed by each named defendant to survive a motion to dismiss as to each defendant." Brewer v. Gilroy, 625 Fed. App'x 827, 833 (10th Cir. 2015) (quoting Ashcroft, 556 U.S. at 678) (internal quotations omitted).[1] When the defendant is a municipal entity, the "under color of state law" element of a § 1983 claim requires that the constitutional deprivation occurred pursuant to official policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

[1] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

"The purpose of § 1983 is to deter state actors from using the badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992). The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity shields public officials from facing the burdens of litigation and is an immunity from suit, not simply a defense to a plaintiff's claims. Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006). The Tenth Circuit applies a two-step analysis to determine if a defendant is entitled to qualified immunity. A plaintiff must show that the defendant's actions violated a specific constitutional right and, if the plaintiff has shown that a constitutional violation occurred, the plaintiff must show that the constitutional right was clearly established when the conduct occurred. Toevs. v. Reid, 685 F.3d 903, 909 (10th Cir. 2012). Plaintiff bears the burden to allege that her constitutional rights were violated and that the law giving rise to her claims was clearly established at the time the acts occurred. Cox v. Glanz, 800 F.3d 1231, 1246 (10th Cir. 2015); Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).

Linn argues that some of plaintiffs' claims are barred by the applicable statute of limitations for § 1983 claims. There is no federal statute of limitations for a plaintiff to bring a § 1983 claim but, instead, a federal district court must borrow the state statute of limitations for an analogous cause of action under state law. Wilson v. Garcia, 471 U.S. 261, 271 (1985). The Tenth Circuit has determined that the Oklahoma statute of limitations for personal injury actions is applicable, and Oklahoma provides a two year statute of limitations for such claims. Meade v. Grubbs, 841 F.2d

1512, 1522-24 (10th Cir. 1988). Plaintiffs respond that the acts alleged in the complaint going back to the January 2023 break-in are part of the same conspiracy, and all of these acts should be considered part of the same conspiracy that culminated with the November 2025 search warrant. Dkt. # 24, at 6. Plaintiffs do not appear to be arguing that any acts occurring before January 2023 could be considered timely, and the Court finds that those claims are plainly time-barred.

Plaintiffs are correct that the continuing violation doctrine can be applicable to § 1983 claims in some situations. Herrera v. City of Espanola, 32 F.4th 980, 994 (10th Cir. 2022). The continuing violation doctrine "applies when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one lawful act, as opposed to conduct that is a discrete unlawful act." Id. at 993 (quoting Hamer v. City of Trinidad, 924 F.3d 1093, 1098 (10th Cir. 2019)). Plaintiffs argue that all acts going back to the January 23, 2023 break-in were part of a single conspiracy to deprive plaintiffs of their constitutional rights. However, for this theory to provide a basis to apply the continuing violation doctrine, plaintiffs must first adequately allege that a conspiracy existed and plaintiffs must allege facts suggesting that the alleged acts occurring outside of the statute of limitations were part of a single conspiracy. Conclusory allegations of conspiracy are not sufficient to state a § 1983 claim, and a plaintiff must allege "specific facts showing an agreement and concerted action among defendants." Bledsoe v. Carreno, 53 F.4th 589, 609 (10th Cir. 2022). Direct evidence concerning the existence of a conspiracy is rare, but a plaintiff can plausibly allege the existence of a conspiracy with specific allegations that the defendants shared a "general conspiratorial objective" and engaged in acts furthering that objective. Id. Even considering plaintiffs' pro se status, plaintiffs have failed to adequately allege the existence of a conspiracy for the purpose of a § 1983 claim. Plaintiffs make no allegations identifying even a

general objective of the alleged conspiracy, nor can the Court determine which defendants are alleged to have joined in or participated in the conspiracy. The law is clear that vague allegations concerning the existence of a conspiracy do not state a § 1983 claim, and plaintiffs' conclusory allegations that certain unspecified defendants conspired to violate plaintiffs' constitutional rights are insufficient for the Court to infer the existence of a conspiracy. The Court finds no basis to invoke the continuing violation doctrine, and plaintiffs' claims are limited to acts occurring within two years of the filing of the complaint. Plaintiffs' complaint was filed on February 26, 2026, and acts occurring before February 26, 2024 will not be considered as a viable basis for a claim against any defendant.

The only allegations concerning Linn's conduct during the relevant time period concern the execution of a search warrant in November 2025. Plaintiffs allege that law enforcement officers executed a search warrant at their home and Linn "led the raid" after obtaining a search warrant based on a false report of a scream coming from the basement of plaintiffs' home. Id. at 4. Plaintiffs allege that undisclosed police officers removed them from the home and held them at gunpoint, and the officers did not allow plaintiffs to access appropriate clothing for cold weather. Id. Law enforcement officers allegedly damaged security cameras and plaintiffs' home, and Linn refused to show plaintiffs the search warrant until the conclusion of the search. Id. Plaintiffs argue that law enforcement officers refused to end the search after learning that the "scream" came from a digital doorbell that had been set to make a scary effect for Halloween. Dkt. # 24, at 2. Plaintiffs now claim that Linn personally engaged in the "intentional, excessive, and bad-faith destruction" of their property, although this is not alleged in the amended complaint. Id. at 3. Plaintiffs also fault Linn for failing to leave an inventory following the completion of the search, even though Linn allegedly

admitted that he was legally obligated to leave a written and itemized inventory of all property seized during the search. Id.

Plaintiffs argue that the November 2025 search was invalid from its inception, because the purported "scream" providing the basis for probable cause came a digital doorbell and officers were mistaken in their belief that a person could be in jeopardy inside the home. Dkt. # 24, at 2. "Probable cause exists when a 'fair probability' exists 'that contraband or evidence of a crime will be found in a particular place.'" United States v. Holt, 173 F.4th 1335, 1340-41 (10th Cir. 2026). The law is clear that a police officer's reasonable but mistaken understanding of the facts does not negate the existence of probable cause, although a mistake of law does not provide a basis for the existence of probable cause. Sherouse v. Ratchner, 573 F.3d 1055, 1059 (10th Cir. 2009). Plaintiffs allege that police obtained a search warrant after receiving a report of a scream coming from the basement of their home, and this could suggest to a reasonable police officer that a person inside the home needed assistance or was the victim of a crime. The search warrant may have based on a mistake of fact concerning the source of the scream, but plaintiffs have not alleged any facts suggesting that the mistake of fact was unreasonable or that any of the officers involved in the search knew of the falsity of the source of the reported scream. Plaintiffs' allegations do not provide any basis for the Court to find that the search warrant itself was defective or that law enforcement officers acted unreasonably by relying on the search warrant.

Concerning the execution of the search warrant, plaintiffs make only vague allegations describing Linn's role in the search. Plaintiffs allege that Linn "led the raid," and other law enforcement officers forced plaintiffs to wait outside in the cold while the search warrant was executed. Dkt. # 11, at 4. In plaintiffs' response to the motion to dismiss, plaintiffs state that "Linn

engaged in the intentional, excessive, and bad-faith destruction of [p]laintiffs' personal property," but this assertion is actually based on the conduct of other officers who allegedly damaged plaintiffs' property. Section 1983 does not authorize liability against a supervisor under a respondeat superior theory, and a claim of supervisory liability typically requires allegations establishing "(1) personal involvement, (2) causation, and (3) state of mind." Perry v. Durborow, 892 F.3d 1116, 1121 (10th Cir. 2018). Plaintiffs make no allegations suggesting that Linn had any personal involvement in the alleged destruction of their property, nor are there any allegations that Linn personally directed another officer to engage in such conduct. The Court finds no basis that Linn could be held liable for the conduct of other law enforcement officers under a theory of supervisory liability based on the allegations of the amended complaint.

Finally, plaintiffs argue that Linn had a legal obligation to show them the search warrant and provide an inventory of all items seized during the search. Neither of these arguments has any legal support. The Supreme Court has determined that neither the Fourth Amendment nor the Federal Rules of Criminal Procedure require a law enforcement officer to present a property owner with a search warrant at the outset of a search. United States v. Grubbs, 547 U.S. 90, 99 (2006) ("The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but the interposing, *ex ante*, the 'deliberate, impartial judgment of a judicial officer . . ."). Plaintiffs' remaining argument concerning the inventory of property seized during the search also fails, as the Court can find no legal requirement for law enforcement officers to immediately present a property owner with a written inventory of seized property. Instead, Oklahoma law requires a law enforcement officer to prepare a written return of search warrant, and the return must include "a written inventory of the property taken, which shall be made publicly."

OKLA. STAT. tit. 22, § 1233. Plaintiffs cite City of West Covina v. Perkins, 525 U.S. 234 (1999), for the proposition that law enforcement officer are required to "provide notice and an inventory of seized property." Dkt. # 24, at 6. However, City of West Covina actually concerns a property owner's due process rights to notice of state law remedies for recovery of seized property, and the case does not have anything to do with the immediate presentation of an inventory to a property owner following a search. The Court finds no legal basis, let alone any clearly established law, suggesting that a law enforcement officer must immediately provide a property owner with an inventory of seized property following a search, and this argument does not show that Linn violated plaintiffs' constitutional rights. Plaintiffs have not alleged any plausible theory under which Linn could be held liable for violating their constitutional rights, and Linn is entitled to qualified immunity from plaintiffs' claims.

**III.**

Plaintiffs have requested a 60 day extension of time to serve Mary Ann Patterson, Brian Woolsey, Kenneth Stafford, and Deputy Williamson, because they have been unable to locate these defendants to properly effect service of process. Dkt. # 22. Plaintiffs also ask the Court to order defendants to return all property seized during the execution of a search warrant on November 18, 2025. Dkt. # 23.

The Court will grant plaintiffs a 30 day extension of time to serve these four defendants, but plaintiffs' request for a 60 day extension of the service deadline is excessive. Plaintiffs' motion (Dkt. # 22) was filed on July 30, 2026, but the facts stated in the motion suggest that plaintiffs stopped making good faith efforts to locate and serve defendants after June 2026. Plaintiffs are proceeding pro se and the Court will allow them some additional time to attempt to serve those

defendants. However, plaintiffs are advised that no further extensions of the service deadline will be granted, and any defendants who have not been served after this deadline expires will be dismissed under Fed. R. Civ. P. 4(m).

As to plaintiffs' motion for return of property (Dkt. # 23), this is effectively a motion for permanent injunctive relief, and this motion is premature and improper at this stage of the case. None of the remaining defendants has been served, and the Court will not consider granting any injunctive relief until defendants have been served and given an opportunity to appear and be heard in this case. The Court is unlikely to order the return of property while this case remains pending, but plaintiffs may have remedies under state law that they can pursue while they litigate their § 1983 claims in this Court. Plaintiffs' motion for the immediate return of seized property (Dkt. # 23) is denied.

**IT IS THEREFORE ORDERED** that defendant Heath Linn's motion to dismiss (Dkt. # 20) is **granted**, and Heath Linn is hereby **terminated** as a party. The parties shall correct the case caption accordingly on future pleadings.

**IT IS FURTHER ORDERED** that plaintiffs' motion for extension of time to serve certain defendants (Dkt. # 22) is **granted in part** and **denied in part**; the motion is granted as to plaintiffs' request for an extension of time to serve certain defendants (Patterson, Woolsey, Stafford, and Williamson) but plaintiffs' request for a 60 day extension of time is denied. Plaintiffs' deadline to serve defendants Patterson, Woolsey, Stafford, and Williamson is extended to **September 17, 2026.**

**IT IS FURTHER ORDERED** that plaintiffs' motion for return of seized property (Dkt. # 23) is **denied**.

**DATED** this 18th day of August, 2026.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE